Norton v. Spencer, supra, 351 F.3d at 4-5.

The trial judge did not instruct the jury that they were permitted to consider evidence of petitioner's intoxication in deciding whether the Commonwealth proved the specific intent element of mayhem beyond a reasonable doubt. *See Trial Tr. Vol. IV, at 54-82.* Following the jury charge, petitioner's trial counsel indicated to the trial judge that he did not object to the jury instructions given by the trial judge. *Trial Tr. IV, at 82.* Petitioner's trial counsel did not request such an instruction. *See Defendant's Record Appendix, at 12-24; Trial Tr. Vol. IV, at 28-29.*

In Massachusetts, "Where an offense requires proof of specific intent and there is evidence 'tending to show' that the accused may have been intoxicated at the time of the offense, the judge, if requested, must instruct the jury to consider the defendant's intoxication in determining whether the Commonwealth has proved that specific intent beyond a reasonable doubt." Commonwealth v. Traylor, 43 Mass. App. Ct. 239, 243-244 (1997) (citing and quoting Commonwealth v. Henson, 394 Mass. 584, 593 (1985)). If a trial judge is requested to instruct the jury to consider the defendant's intoxication in determining whether the Commonwealth has proved specific intent beyond a reasonable doubt, and if the evidence tends to show that the accused may have been intoxicated at the time of the offense, then the trial judge is required to give such an instruction. Commonwealth v. Traylor, supra, 43 Mass. App. Ct. at 243-244 (citing and quoting Commonwealth v. Henson, supra, 394 Mass. at 593). The question of whether an intoxication instruction is required turns on whether the evidence suggests "'a condition of "debilitating intoxication" that could support a reasonable doubt as to whether a defendant was capable of forming the requisite criminal intent.'" See Commonwealth v. Erdely, 430 Mass. 149, 152 (1999) (quoting Commonwealth v. James, 424 Mass. 770, 789 (1997)) ("'Voluntary

17

intoxication instructions are not required where the evidence does not suggest a condition of "debilitating intoxication" that could support a reasonable doubt as to whether a defendant was capable of forming the requisite criminal intent.'"). See also Commonwealth v. LeBlanc, 433 Mass. 549, 556 (2001) (judge properly instructed the jury on the issue of intoxication where "[t]he defendant drove two teenagers to a wooded area and bludgeoned them to death" and "there was conflicting evidence as to the extent of his intoxication").

Because there existed strong evidence showing that petitioner was intoxicated at the time the charged offenses allegedly occurred, *see, e.g., Trial Tr. Vol. II, at 81-82; Trial Tr. Vol. III, at 89-92,* petitioner was entitled to a jury instruction which informed the jury that they were permitted to consider evidence of the petitioner's intoxication in determining whether the Commonwealth proved the specific intent required for the charge of mayhem beyond a reasonable doubt. See Commonwealth v. Traylor, supra, 43 Mass. App. Ct. at 243-244; Commonwealth v. Henson, supra, 394 Mass. at 593. Additionally, because the principal defense offered by petitioner's trial counsel was that petitioner was unable to form the necessary specific intent due to his intoxication, and because the jury could have retained a reasonable doubt as whether petitioner had indeed formed the requisite specific intent given his intoxication, Attorney Busconi's failure to request such an instruction could only have been the result of a materially substandard performance. *Compare Trial Tr. Vols. I-IV and Trial Tr. Vol. IV, at 37-49 with* Commonwealth v. Traylor, supra, 43 Mass. App. Ct. at 243-244; Commonwealth v. Henson, supra, 394 Mass. at 593; Commonwealth v. LeBlanc, supra, 433 Mass. at 556.

Accordingly, applying the clearly established law of Strickland v. Washington, supra, with respect to Attorney Busconi's failure to request the trial judge to instruct the jury that they

were permitted to consider evidence of the petitioner's intoxication in deciding whether the Commonwealth proved the specific intent element of mayhem beyond a reasonable doubt, and Attorney Busconi's failure to object to the trial judge's failure to give such an instruction, it is clear that counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that this deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable. See Williams v. Taylor, supra, 529 U.S. at 390 (quoting Strickland v. Washington, supra, 466 U.S. at 687) (as quoted above); see also Williams v. Taylor, supra, 529 U.S. at 390-391 (quoting Strickland, supra, 466 U.S. at 688, 694) (as quoted above).

In light of the foregoing, this petition should be granted, whether the issue is reviewed de novo or under 28 U.S.C. § 2254(d)(1), because the Appeals Court's decision, in which the Appeals Court failed to find that petitioner had been denied his Sixth Amendment right to the effective assistance of counsel under Strickland v. Washington, supra, by his trial counsel's failure either to request the trial judge to instruct the jury that they were permitted to consider evidence of the petitioner's intoxication in deciding whether the Commonwealth proved the specific intent element of mayhem beyond a reasonable doubt, or to object to the trial judge's failure to give such an instruction, constituted reversible error and was both contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

**B. Failure to File or Litigate a Motion to Suppress Statements.**

19

The Appeals Court specifically declined to address the merits of petitioner's federal claim of ineffective assistance of counsel as to his trial counsel's failure to file or litigate a motion to suppress statements allegedly made by petitioner while in police custody. See Commonwealth v. Anderson, supra, 58 Mass. App. Ct. at 127-127. Accordingly, the issue is reviewed de novo. See Norton v. Spencer, supra, 351 F.3d at 4-5.

Statements made in response to custodial police interrogation violate the Fifth Amendment privilege against self-incrimination unless the defendant is advised that he has a right to remain silent; that any statement he makes will be used as evidence against him; that he has a right to the presence of an attorney during questioning; and that if he cannot afford an attorney one will be appointed for him during questioning. Miranda v. Arizona, 384 U.S. 436 (1966). "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). In Massachusetts, the prosecution must prove beyond a reasonable doubt a knowing, intelligent, and voluntary waiver of Miranda rights. Commonwealth v. Day, 387 Mass. 915, 921 (1983). The prosecution must also prove beyond a reasonable doubt that the statement was voluntary under due process. Commonwealth v. Tavares, 385 Mass. 140, 151-152 (1982) (citing Jackson v. Denno, 378 U.S. 368 (1964)), cert. denied, 457 U.S. 1137 (1982).

In Massachusetts, when the Commonwealth seeks to introduce an alleged inculpatory statement or confession of a criminal defendant, the "'humane practice'" of Massachusetts requires that the question of whether the statement or confession was voluntary is to be decided at a preliminary hearing in the absence of a jury. See Commonwealth v. Tavares, supra, 385 Mass. at 149-150 (quoting Commonwealth v. Marshall, 338 Mass. 460, 461-462 (1959))

20

(applying the so-called "humane practice" to both confessions and inculpatory statements falling short of confessions). Further, in Massachusetts, statements made while under the influence of or the withdrawal from alcohol or drugs have been held to be involuntary. Commonwealth v. Meehan, 377 Mass. 552, 565-568 (1979).

As the record makes clear, there exists a substantial likelihood that petitioner was too intoxicated and physically injured to make a voluntary, knowing and intelligent waiver of his Miranda rights or to make statements to the police that were voluntary under due process. *See Trial Tr. Vol. II, at 81-81; Trial Tr. Vol. III, at 16, 31, 33, 87, 90-92, 151.* It is further clear from the record that the failure of petitioner's trial counsel to file or litigate a motion to suppress statements was a non-strategic, inadvertent error constituting substandard performance: As noted above, when the Commonwealth sought to introduce testimony regarding petitioner's alleged statements, petitioner's trial counsel objected. *Trial Tr. Vol. 2, at 80.* Further, at sidebar, when asked by the trial judge whether there was a motion to suppress statements in this case, Attorney Busconi responded, "Again, Judge, I wasn't here. It's part of my problem." *Id.* Subsequently, at sidebar, in response to the trial judge's placing on the record the absence of a filed motion to suppress, Attorney Busconi explained his lapse by stating, "I suspect — You know, we all know that everybody thought this case was going to be disposed of." *Trial Tr. Vol. II, at 132-133.* Additionally, the volume and inculpatory nature of the alleged statements, described supra, make it clear that the admission of these statements was materially prejudicial to the petitioner. *See Trial Tr. Vol. II, at 80, 100; Trial Tr. Vol. III, at 14; Trial Tr. Vol. III, at 23; id. at 21, 23; Trial Tr. Vol. II, at 82, 100; Trial Tr. Vol. III, at 24; id.; id. at 25; Trial Tr. Vol. II, at 83; Trial Tr. Vol. II, at 101-102; id. at 103-104; Trial Tr. Vol. III, at 24, 25; Trial Tr. Vol. III, at 24-25; id. at 26;*

21

*id. at 25; Trial Tr. Vol. II, at 83-84; Trial Tr. Vol. II, at 100, 105; id. at 105; Trial Tr. Vol. III, at 25; Trial Tr. Vol. II, at 101; Trial Tr. Vol. II, at 84-85, 104; Trial Tr. Vol. II, at 104-105.*

Accordingly, applying the clearly established law of Strickland v. Washington, supra, with respect to Attorney Busconi's failure to file or litigate a motion to suppress the statements allegedly made by petitioner while in police custody, it is clear that counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that this deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable. See Williams v. Taylor, supra, 529 U.S. at 390 (quoting Strickland v. Washington, supra, 466 U.S. at 687) (as quoted above); see also Williams v. Taylor, supra, 529 U.S. at 390-391 (quoting Strickland, supra, 466 U.S. at 688, 694) (as quoted above).

In light of the foregoing, this petition should be granted, whether the issue is reviewed de novo or under 28 U.S.C. § 2254(d), because the Appeals Court's decision, in which the Appeals Court failed to find that petitioner had been denied his Sixth Amendment right to the effective assistance of counsel under Strickland v. Washington, supra, by his trial counsel's failure to file or litigate a motion to suppress the statements allegedly made by petitioner while in police custody, constituted reversible error and was both contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

**III. Appeals Court's Application of a Conclusive Presumption of Specific Intent.**

As petitioner's application to the Supreme Judicial Court of Massachusetts for further

22

appellate review was denied, see Commonwealth v. Anderson, 439 Mass. 1108 (2003), petitioner's federal claim, that the Appeals Court in Commonwealth v. Anderson, supra, 58 Mass. App. Ct. 117, had effectively applied a conclusive presumption of the specific intent to maim or disfigure in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, was not adjudicated on the merits in a state court proceeding. Accordingly, the issue is reviewed de novo. See Norton v. Spencer, supra, 351 F.3d at 4-5.

The Appeals Court effectively held that an instruction to the jury to consider the petitioner's intoxication in determining whether he had the capacity to formulate the specific intent to maim or disfigure was not required in this case because the nature and cause of the injuries sustained by the victim constituted evidence sufficient for a finding that the petitioner formed the specific intent to maim or disfigure. See Commonwealth v. Anderson, supra, 58 Mass. App. Ct. at 122-124 (finding conclusive evidence of specific intent based on "the brutal nature of the assault" (citing Commonwealth v. Hamm, 19 Mass. App. Ct. 72, 80, review denied, 397 Mass. 1101 (1984)), and based on the principle that "'[s]pecific intent may be inferred from the nature of the injuries as well as evidence that "the injuries arose from a sustained or atrocious attack."'" (quoting Commonwealth v. Sparks, 42 Mass. App. Ct. 915, 916 (1997) (quoting Commonwealth v. Cleary, 41 Mass. App. Ct. 214, 217 (1996)); also citing and quoting accord Commonwealth v. Doucette, 391 Mass. 443, 456 (1984)).

"'[T]he trial court may not withdraw or prejudge an issue by instruction that the law raises a presumption of intent from an act.'" Sandstrom v. Montana, 442 U.S. 510, 521-522 (1979) (quoting Morissette v. United States, 342 U.S. 246, 274-275 (1952) (emphasis in Sandstrom)). "'A conclusive presumption which testimony could not overthrow would effectively

23

*eliminate intent as an ingredient of the offense.*'" Sandstrom v. Montana, supra, 442 U.S. at 522 (quoting Morissette, supra, 342 U.S. at 274-275 (emphasis in Sandstrom). A conclusive presumption violates due process by eliminating the requirement that the State "prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged'". Sandstrom v. Montana, supra, 442 U.S. at 520, 523 (citing and quoting In re Winship, 397 U.S. 358, 364 (1970)). See also Sandstrom, supra, 442 U.S. at 524; Winship, supra, 397 U.S. at 364).

The United States Supreme Court in Sandstrom v. Montana, supra, explains the constitutional deficiency of the conclusive presumption with reference to the prior cases of Morissette v. United States, supra, and United States v. United States Gypsum Co., 438 U.S. 422 (1978). See Sandstrom, supra, 442 U.S. at 520-523. The Court noted that in Morissette, where the defendant was charged with willful and knowing theft of government property, the trial judge erred by ruling that felonious intent "is presumed by [the defendant's] own act." Sandstrom, supra, 442 U.S. at 521-522 (citing and quoting Morissette, supra, 342 U.S. at 249, 273-275). The Court further noted that in United States v. United States Gypsum Co., supra, where the defendants were charged with violations of the Sherman Act, the trial judge erred by instructing the jury that, *inter alia*, "if the effect on the exchanges of pricing information was to raise, fix, maintain, and stabilize prices, then the parties to them are presumed, as a matter of law, to have intended that result." Sandstrom, supra, 442 U.S. at 522-523 (citing and quoting United States Gypsum Co., supra, 438 U.S. at 430, 435, 446).

The Sandstrom Court approved the results in Morissette and United States Gypsum Co. as standing for the principle that "a conclusive presumption . . . would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends

to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury." Sandstrom v. Montana, supra, 442 U.S. at 523.

Therefore, by taking from the jury the issue of whether the petitioner's intoxication diminished the petitioner's capacity to form the required specific intent, the Appeals Court violated due process under the Fourteenth Amendment. See Sandstrom v. Montana, supra, 442 U.S. at 520-523; see also Sandstrom, supra, 442 U.S. at 524; Winship, supra, 397 U.S. at 364; *compare Trial Tr. Vol. III, at 88-92, 139, 144* (at some time subsequent to 4:30 or 5:00 p.m., the petitioner consumed up to 12 beer drinks plus, possibly, an additional amount of beer from a pitcher of beer sent over by a friend of the petitioner).

In light of the foregoing, this petition should be granted, whether the issue is reviewed de novo or under 28 U.S.C. § 2254(d), because, applying the clearly established Federal law of Sandstrom v. Montana, supra, and In re Winship, supra, the Appeals Court's effective application of a conclusive presumption of the specific intent to maim or disfigure constituted reversible error and was both contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

For all of the reasons stated above, petitioner respectfully urges this Honorable Court to grant his petition for a writ of habeas corpus.

Respectfully submitted,

JOHN ANDERSON,
By his Attorney,

Date: August 11, 2005

*David H. Mirsky*

David H. Mirsky, Attorney at Law
(MA B.B.O. # 559367)
99 Water Street, P.O. Box 1063
Exeter, NH 03833
Tel. 603-773-2199

### CERTIFICATE OF SERVICE

I, David H. Mirsky, hereby certify that on August 11, 2005, a copy of the above document was mailed by first class US Mail, postage prepaid, to Eva M. Badway, Assistant Attorney General, Criminal Bureau, One Ashburton Place, Boston, MA 02108.

*David H. Mirsky*

David H. Mirsky