UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN ANDERSON ) <br>      Petitioner, ) <br> ) <br> v. ) <br> ) <br> DAVID NOLAN ) <br>      Respondent. ) | Civil Action No. 04-12355-RGS |

**RESPONDENT'S MEMORANDUM OF LAW IN
OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS**

After a jury trial in Middlesex Superior Court before Massachusetts Superior Court Associate Justice Charles T. Spurlock, the jury convicted John Anderson of two counts of assault and battery, mayhem, and assault and battery by means of a dangerous weapon. After unsuccessfully pursuing a motion for a new trial and an appeal in the Massachusetts state courts, the petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By this habeas action, the petitioner contends that his continued incarceration by the respondent, David Nolan, the Superintendent of MCI-Cedar Junction, violates federal law. This memorandum of law is submitted in opposition to the petition for habeas corpus. As detailed herein, the petitioner has failed to demonstrate that he is entitled to the extraordinary remedy of habeas corpus.

**PRIOR PROCEEDINGS**

On September 25, 1997, a Middlesex grand jury returned an indictment charging Anderson with four counts of assault and battery, mayhem, assault and battery by means of a dangerous weapon, and assault with intent to murder. *See* Respondent's Supplemental Answer, [hereinafter cited as " S.R.A."], Ex. 1, Docket Sheets, *Commonwealth v. John Anderson*,

MICR1997-01838. On August 30, 1999, after a jury trial before Massachusetts Associate Justice Charles T. Spurlock, the jury convicted Anderson of two counts of assault and battery, mayhem, and assault and battery by means of a dangerous weapon. *Id*. The jury returned a verdict of not guilty on the charge of assault with intent to murder. *Id*. Judge Spurlock sentenced Anderson to a state prison term of a minimum of fifteen years and a maximum of fifteen years and one day on the mayhem conviction, along with a concurrent state prison term of a minimum of nine years and a maximum of ten years for assault and battery with a deadly weapon conviction. *Id*. The two remaining assault and battery convictions were placed on file with the petitioner's consent. *See* S.R.A., Ex. 1. On September 8, 1999, Anderson timely filed his notice of appeal. *Id*. On April 28, 2000, Anderson filed a *pro se* motion for a new trial that Judge Spurlock denied on May 18, 2001. *Id*. The petitioner did not appeal the denial of the motion for a new trial. *Id.*

On May 14, 2003, the Massachusetts Appeals Court affirmed Anderson's conviction for mayhem and vacated, as duplicative, his conviction and sentence on the charge of assault and battery by means of a dangerous weapon and dismissed the indictment. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. 117, 787 N.E. 2d 1136 (2003). Anderson filed an application for further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC"). *See* S.R.A., Ex. 6, ALOFAR. On June 26, 2003, the SJC denied the petitioner's ALOFAR. *See* S.R.A., Ex. 7 and 8. Anderson also filed a petition for certiorari in the United States Supreme Court that was denied on November 10, 2003. *See* Petition at ¶ 9(f)(3).

On November 5, 2004, Anderson filed this petition for habeas corpus pursuant to 28 U.S.C.§ 2254. On May 24, 2004, the respondent filed an answer and supplemental answer. On

August 12, 2005, the petitioner filed a memorandum of law in support of his petition for habeas corpus. The respondent now files this memorandum of law in opposition to the petition for habeas corpus.

## STATEMENT OF THE FACTS

The recitation of the underlying facts by the Massachusetts Appeals Court is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1). *Dolinger v. Hall,* 302 F.3d. 5, 7 n. 5 (1st Cir. 2002). The United States Court of Appeals for the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F. 3d 590, 598 (1st Cir. 2001). The state court's findings of facts can be overcome only if the petitioner demonstrates that they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *Id.* at 597-598, *quoting* 28 U.S.C. § 2254(d)(2).

The Massachusetts Appeals Court provided the following facts:

> Rita Parks and the [petitioner] were dating. During the day in question, August 1, 1997, the two had been drinking at various locations, and, as evening drew near, they made their way to Captain John's bar in Lowell. Parks happened to sit at the bar next to the victim, Glenn Tetrault, who expressed a sexual innuendo about her breasts. Parks related the remark to the [petitioner]. Angered by this comment directed to his girlfriend, the [petitioner] followed Tetrault outside the bar. Parks came along. The [petitioner] began throwing punches, and Tetrault fell to the ground. The assault intensified, as the [petitioner] kicked and stomped on Tetrault's face and head. As the attack was ongoing, a bystander, Jay Carney, saw a pool of blood and observed the victim's head bouncing up and [58 Mass.App.Ct. 120] down on the pavement, as the [petitioner] continued to deliver blows. Carney sought to intervene and stop the beating, but was attacked by the [petitioner]. As the latter two tussled, Parks joined the fray and jumped on Carney. The attack upon Carney was the predicate for one of the [petitioner]'s two convictions for assault and battery.

*See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 119-120, 787 N.E. 2d at 1138-39.

3

**ARGUMENT**

**I.    The Habeas Petition Should Be Denied Where the Petitioner's Claims Are Without Merit.**

   **A.    The Standard of Review.**

"Under the AEDPA, a state prisoner can prevail only if the state court's decision `was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States.'" *Tyler v. Cain*, 533 U.S. 656, 660 (2001) (*quoting* 28 U.S.C. § 2254(d)(1)). A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient – the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002) (*citing Taylor*, 529 U.S. at 411); *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc) ("`some increment of incorrectness beyond error is required'. . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"(quoting *Francis S. v. Stone*, 221 F.3d

100, 111 (2d Cir. 2000)).  Where, for instance, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied.  *McCambridge*, 303 F.3d at 37 (*citing O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)).

In some habeas cases, the resolution of the petitioner's claims will turn entirely on the state court's determination of the underlying factual issues.  *DiBenedetto v. Hall*, 272 F.3d 1, 7 n.1 (1st Cir. 2001), *cert. denied*, 535 U.S. 1024 (2002).  This is because, under the AEDPA, state court factual determinations are "presumed to be correct," unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary.  28 U.S.C. § 2254(e)(1); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).  The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion, *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *see also Thompson v. Keohane*, 516 U.S. 99, 111-13 (1995) (for purpose of *Miranda*, scene-setting factual findings involving the trial court's assessment of credibility, are presumed to be correct), and extends to factual determinations made by both state trial and appellate courts.  *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), *cert. denied*,  537 U.S. 1236 (2003).

> **B.** **The State Court's Decision Concerning the Petitioner's Ineffective Assistance of Counsel Claim Relative to the Intoxication Instruction Was  Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Authority**.

In *Williams v. Taylor*, the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), was the clearly established federal law that controlled claims related to ineffective assistance of counsel.  *Williams v. Taylor*, 529 U.S. at 390-391.  Thus, a petitioner alleging ineffective assistance of counsel must establish two elements in state court in order to prevail:

5

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense.

*Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir. 2002)( citing *Strickland*, 466 U.S. at 687). As the Supreme Court recently explained, ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness under prevailing professional norms. *See Rompilla v. Beard*, 125 S.Ct. 2456, 2461 (June 20, 2005)(citing *Strickland v. Washington*, 466 U.S. at 687-688; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(quotations omitted)).

In state court, the petitioner bore the heavy burden of proving ineffective assistance. *Scarpa v. DuBois*, 38 F.3d 1, 8-9 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993)(requiring the two-part analysis articulated above). First, "'judicial scrutiny of counsel's performance must be highly deferential.'" *Ouber v. Guarino*, 293 F.3d at 25, citing *Strickland*, 466 U.S. at 689. Furthermore, the reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented. *Id.* (citing *Bell v. Cone*, 535 U.S. 685, 696 (2002)); *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). Only if, "in light of all the circumstances, the [alleged] acts or omissions of counsel were outside the wide range of professionally competent assistance," can a finding of deficient performance ensue. *Ouber v. Guarino*, 293 F.3d at 25( quoting *Strickland*, 466 U.S. at 690). Finally, counsel's alleged blunders are not to be "judged solely by the 'surrounding circumstances' of the representation,

but, rather, [are to] be judged [by the state court] in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38 F.3d at 15. *See also Matthews v. Rakiey*, 54 F.3d 908, 911 (1st Cir. 1995).

Secondly, even if a lawyer's performance is constitutionally unacceptable, relief will be withheld unless the petitioner demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ouber v. Guarino*, 293 F.3d at 26 (quoting *Strickland*, 466 U.S. at 694). While this level of prejudice may be presumed in a few settings, that is the exception, not the rule. *Id*. (citing *Strickland*, 466 U.S. at 694). Indeed, the petitioner must demonstrate that he was prejudiced, *i.e.*, that his attorney's parlous conduct may have altered the outcome of the case. *Id.*(citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)). Although the possibility of a different outcome must be substantial in order to establish prejudice, it may be less than fifty percent. *Id*. (citing *Strickland*, 466 U.S. at 693 (explaining that "a [petitioner] need not show that counsel's deficient conduct more likely than not altered the outcome in the case")).

> **1.    The State Court's Decision Relative To The Petitioner's Ineffective Assistance of Counsel Claim Concerning Trial Counsel's Failure to Request An Intoxication Instruction Was Neither Contrary To, Nor An Unreasonable Application of, Clearly Established Supreme Court Authority**.

The petitioner asserts that his trial counsel was ineffective for failing to request a jury instruction to consider the petitioner's intoxication in determining whether he had the capacity to formulate specific intent to maim or disfigure the victim. *See* Petition at ¶ 12A. In its careful review of the record, the Appeals Court reasonably rejected this assertion, explaining:

> Notwithstanding the evidence that the [petitioner] was not intoxicated to the point of debilitation, we pause in consideration of the amount of beer consumed by the [petitioner]

throughout the evening. (FN4)[1] With such pause and for purposes of analysis, we will assume hypothetically that an intoxication instruction was warranted. We will further assume hypothetically that omission of such an instruction was either the result of ineffective assistance of counsel, or unobjected-to judicial error. But even with these assumptions, our "review [of] the evidence and the case as a whole, considering the strength of the Commonwealth's case, as well as the nature and significance of the alleged errors," *Commonwealth v. Chase*, 433 Mass. 293, 299, 741 N.E.2d 59 (2001), does not persuade us that the lack of a voluntary intoxication instruction resulted in a substantial risk of a miscarriage of justice. *Cf. Commonwealth v. Lawrence*, 404 Mass. 378, 395, 536 N.E.2d 571 (1989).

In this respect, we are not persuaded that, had such an intoxication instruction been given, it would have materially influenced the guilty verdict, or been of such effect, when applied to the trial evidence, to render it inferentially plausible that the jury's verdict on the mayhem charge would have been different. *See Commonwealth v. Freeman*, 352 Mass. 556, 563-564, 227 N.E.2d 3 (1967); *Commonwealth v. Miranda*, 22 Mass.App.Ct. 10, [58 Mass.App.Ct. 123] 21, 490 N.E.2d 1195 (1986). In reaching this determination, we consider the strength of the Commonwealth's evidence, including, but not limited to, the evidence that, notwithstanding his alcohol consumption, the [petitioner] remained in control of his faculties--a cognitive affect from which a jury could further conclude that the [petitioner] was capable of forming the requisite specific intent to commit mayhem. In addition to proof concerning the [petitioner]'s mental functioning, the brutal nature of the assault bespeaks of the [petitioner]'s ability to formulate specific intent. The [petitioner]'s repeated stomping on Tetrault's head was so forceful that the victim's head bounced up and down on the sidewalk. *See Commonwealth v. Hamm*, 19 Mass.App.Ct. 72, 80, 471 N.E.2d 416 (1984) (where [petitioner] "stomped" on victim's head and face, evidence was sufficient to support mayhem conviction). Moreover, the severity of the resulting injuries also supports the theory that the crime was perpetrated with specific intent. The beating of Tetrault was so savage that his face was rendered unrecognizable, and the resulting disfigurement so substantial that reconstructive surgery was required. "Specific intent may be inferred from the nature of the

---

[1] In footnote 4, the Massachusetts Appeals Court stated, "On the question of intoxication, the contravening evidence lies in the testimony concerning the amount of beer that the [petitioner] had consumed throughout the course of the evening. Parks could not remember precise times, but from her account which referenced various approximate times, it appears that she and the [petitioner] arrived at the DKLV bar in the early evening, perhaps as early as 4:30 P.M. to 5:00 P.M. At this drinking establishment, Parks and the [petitioner] had five or six beers. Thereafter, the two returned to the [petitioner]'s house, where they split a six-pack of beer. Later in the evening, between approximately 8:00 P.M. and 8:30 P.M., Parks and the [petitioner] arrived at Captain John's, where, over the course of the ensuing several hours, each consumed three mugs of beer. The beating occurred sometime around 1:00 A.M. to 1:30 A.M."

injuries as well as evidence that 'the injuries arose from a sustained or atrocious attack.' " *Commonwealth v. Sparks*, 42 Mass.App.Ct. 915, 916, 675 N.E.2d 1176 (1997), quoting from *Commonwealth v. Cleary*, 41 Mass.App.Ct. 214, 217, 669 N.E.2d 452 (1996). Accord *Commonwealth v. Doucette*, 391 Mass. 443, 456, 462 N.E.2d 1084 (1984) ("the nature and number of the wounds are inconsistent with a claim of debilitating intoxication" so as to negate specific intent).

We also consider that the judge twice instructed the jury concerning the requirement of finding specific intent as an element of proof on the mayhem offense, first at the beginning of the case and second in the final charge. The judge's carefully calibrated instructions reduced any substantial risk of a miscarriage of justice by focusing the jury searchingly on the precise question whether the [petitioner] had the specific intent to maim or disfigure the victim. (FN5)[2]

Thus, even assuming there was error--either by the defense [58 Mass.App.Ct. 124] attorney or the trial judge--in the omission of an intoxication instruction, after a full review of the evidentiary record and the comprehensive and well-stated instructions, we are not "left with uncertainty that the [petitioner]'s guilt has been fairly adjudicated." (FN6)[3] *Commonwealth v. Chase*, 433 Mass. at 299, 741 N.E.2d 59.

*See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 122-124, 787 N.E. 2d at 1140-1142. In its decision, the Massachusetts Appeals Court applied the performance/prejudice framework analysis mandated by *Strickland*. In fact, the Massachusetts Appeals Court assumed there was error -- either by the defense attorney or the trial judge-- in the omission of an

---

[2] In footnote 5, the Massachusetts Appeals Court stated, "In defining such specific intent, the judge instructed as follows: 'the Commonwealth must prove beyond a reasonable doubt that the [petitioner] committed the proscribed act upon Mr. Tetreault [sic] with the specific intent to maim or disfigure him. The word maim has no technical meaning and should be construed in its plain, ordinary sense. Maim has been defined more widely as meaning to disable, wound or cause bodily harm or disfigurement of the body. Thus, the Commonwealth must prove by either direct or circumstantial evidence [that] the [petitioner] had a reasonable appreciation that a disabling or disfiguring injury would result from his acts and that he meant to cause that result.'"

[3] In footnote 6, the Massachusetts Appeals Court stated, "The split verdict, by which the jury acquitted the [petitioner] of assault with intent to commit murder, also a specific intent crime, provides some indicia that the lack of an intoxication instruction did not create a substantial risk of an unfair jury verdict."

intoxication instruction.  *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 123-124, 787 N.E. 2d at 1142.  It is of no consequence that the Appeals Court did not explicitly mention *Strickland* where it applied the functional equivalent of the federal standard.  *See Smiley v. Maloney*, 2005WL2116372,* 2 (1st Cir. Sept. 2, 2005)(citing *Stephens v. Hall*, 294 F. 3d 210, 214-215 (1st Cir. 2002)(quoting *Phoenix v. Matesanz*, 189 F. 3d 20, 27 n. 4 (1st Cir. 1999))).  Since the Appeals Court identified and applied  the substance of the *Strickland* standard, and was not presented with facts that were materially indistinguishable from those at issue in *Strickland*, the "contrary to" portion of the analysis drops from the equation.  *See Williams v. Taylor*, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from our cases to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").  In other words, *Strickland* and its progeny do not require an outcome "contrary to" that reached by the Appeals Court.

    In the instant case, Anderson claims that because there existed strong evidence that the petitioner was intoxicated at the time the charged offense occurred he was entitled to a jury instruction which informed the jury that they were permitted to consider evidence of his intoxication in determining whether the Commonwealth proved the specific intent required for the crime of mayhem beyond a reasonable doubt.  *See* Petitioner's Memorandum of Law in Support of the Petition at p. 18.  However, the Appeals Court specifically assumed that is was error, either by the defense attorney or the trial judge in the omission of an intoxication instruction.  *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 122-124, 787 N.E. 2d at 1140-1142.  Furthermore, the Appeals Court determined that petitioner was not inebriated to the point of debilitation, as required under Massachusetts law, after it fully

reviewed the record, including evidence that Anderson was steady on his feet, had no trouble understanding what was said to him or communicating with others, and had no difficulty walking. *See* Tr. II/82, 93, Tr. III/10, 35-36. This evidence, along with the "comprehensive and well-stated instructions," led the Appeals Court to reasonably conclude that the petitioner's guilt was fairly adjudicated. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 122-124, 787 N.E. 2d at 1140-1142. In another words, the Appeals Court reasonably determined that but for counsel's assumed error, the result of the proceeding would not have been different. *See Strickland v. Washington*, 466 U.S. at 694. Thus, habeas relief should be denied.

    **C.**    **The Appeals Court Decision Declining to Reach the Ineffective Assistance of Counsel Claim Relative to the Motion to Suppress Does Not Warrant Habeas Relief.**

The petitioner claims that counsel was ineffective for failing to file a motion to suppress because of an alleged substantial likelihood that petitioner was too intoxicated and physically injured to make a voluntary knowing, and intelligent waiver of his *Miranda* rights or to make statements to the police that were voluntary under due process. *See* Petitioner's Memorandum of Law at p. 21. The Appeals Court specifically declined to decide the ineffective assistance of counsel claim related to the motion to suppress, explaining –

> Where the claimed omission in ineffective representation is the failure to file a suppression motion, the inquiry involves dual assessments. "[T]he defendant must show that the constitutional claim has *merit* and that there was a reasonable possibility that the verdict would have been different without the excludable evidence." *Commonwealth v. Fletcher*, 52 Mass.App.Ct. at 169, 752 N.E.2d 754, quoting from *Commonwealth v. Pena*, 31 Mass.App.Ct. 201, 205, 575 N.E.2d 774 (1991). The [petitioner] presses this claim on direct appeal, notwithstanding that the trial evidence suggests that the [petitioner]'s ineffective representation claim would not meet either of these tenets. However, in the final analysis, because the [defendant]'s failure to file a motion for a new trial on the ineffective assistance

11

>claim (see note 7, supra)[4] pretermitted the development of a complete record which would allow for fully informed appellate review and decision, we decline to reach this claim. "Without the factual record that such a motion [for a new trial] would have generated, we are not in a position to conclude that such a motion [to suppress] would have been allowed and, thus, that trial counsel lost for the defendant the benefit of an available, substantial defense. For all that the present record discloses, the trial judge might well have acted properly in denying the motion to suppress." *Commonwealth v. Fletcher*, 52 Mass.App.Ct. at 172, 752 N.E.2d 754.

See S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 127-128, 787 N.E. 2d at 1144. To the extent the petitioner takes issue with the Appeals Court's decision to decline to reach the ineffective assistance of counsel claim related to the motion to suppress, *see* Petitioner's Memorandum of Law at pp. 19-22, he is challenging an adequate and independent state law that does not provide a basis for federal habeas corpus relief. *See Simpson v. Matesanz*, 175 F. 3d 200, 206-208 (1999). In Massachusetts, an ineffective assistance of counsel claim may be resolved on direct appeal "'when the factual basis of the claim appears indisputably on the record.'" *Commonwealth v. Fletcher*, 52 Mass. App. Ct. 166, 171 752 N.E.2d 754, 759 (2001), (quoting *Commonwealth v. Adamides*, 37 Mass. App. Ct. 339, 344 639 N.E. 2d 1092 (1994)). However, when a factual basis does not appear in the record, the appellate court may decline to rule on a claim of ineffective assistance of counsel that was not advanced in the context of a motion for a new trial. *Id.* (citing *Commonwealth v. McCormick*, 48 Mass. App. Ct. 106, 107, 717 N.E. 2d 1029 (1999)). Although the petitioner attempted to raise the issue of ineffective assistance of counsel related to the motion to suppress for the first time in his appeal,

---

[4] In footnote 7, the Appeals Court stated, "The [petitioner] filed a *pro se* motion for a new trial which was denied. The [petitioner] does not appeal from that ruling. That motion alleged a denial of due process due to unspecified discovery violations. None of the ineffective assistance claims the [petitioner] raises in this appeal were presented in his motion for a new trial.

this was an improper method to raise an appellate issue under Massachusetts procedural rules and the Appeals Court appropriately declined to consider it. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 127-128, 787 N.E. 2d at 1144. On appeal, the Appeals Court explained that because the petitioner failed to include the ineffective claim related to the motion to suppress in his motion for a new trial, he failed to develop a record for appellate review. Thus, the Appeals Court declined to reach the issue. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 127-128, 787 N.E. 2d at 1144. This type of review constitutes the "classic example of an independent and adequate state ground." *Simpson v. Matesanz*, 175 F. 3d 200, 207 (1st. Cir. 1999). Such independent and adequate state grounds exist where "the state court declined to hear [the federal constitutional claim] because the prisoner failed to meet a state procedural requirement. *Id.* at 206 (quoting *Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1999), *cert. denied*, 522 U.S. 1151 (1998). In such a case, considerations of comity and federalism bar the federal court's review. *Id.*(quotations omitted). Habeas relief should be denied.

D. **The Appeals Court Decision Relative to the Application of Specific Intent Does Not Warrant Habeas Relief.**

Errors of state law do not provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). It is not the province of a federal habeas court to reexamine state court determinations of state law questions. *Lewis v. Jeffers*, 497 U.S. at 780-81. In other words, this court does not have jurisdiction in this federal collateral attack of the petitioner's state conviction to review a claimed error of a state criminal law. A federal court may issue a writ of habeas corpus only when a conviction violates the constitution, laws or treaties of the United States. *Estelle v. McGuire*, 502 U.S. at 67-68; 28

U.S.C. §§2241, 2254. "Even if an error of state law could be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment," a federal court may not issue a writ to redress such a deprivation if the claims are merely ancillary to perceived errors of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). *See Adelson v. DiPaola*, 131 F.3d 259, 262 n.3 (1st Cir. 1997); *Hamm v. Latessa*, 72 F.3d 947 (1st Cir. 1995), *cert. denied*, 519 U.S. 947 (1996). *See also Pitts v. Lockart*, 911 F.2d 109, 111-12 (8th Cir. 1990), *cert. denied*, 501 U.S. 1253 (1991)(petitioner's claims that he was deprived of due process and equal protection were not grounds for habeas relief where his conviction was obtained in contravention of state law no matter how "serious and fundamental the error" may have been).

Here, the petitioner asserts that the Appeals Court had effectively applied a conclusive presumption of the specific intent to maim or disfigure in violation of the Due Process Clause of the Fourteenth Amendment. *See* Petitioner's Memorandum of Law in Support of the Petition at p. 23. In fact, the Appeals Court held that in addition to the proof concerning the petitioner's mental functioning, the brutal nature of the assault bespeaks the petitioner's ability to formulate specific intent. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 122-124, 787 N.E. 2d at 1140-1142. The Appeals Court also pointed out that Anderson's repeated stomping on the victim's head was so forceful that the victim's head bounced up and down on the sidewalk. *Id.,* citing *Commonwealth v. Hamm*, 19 Mass. App. Ct. 72, 80, 471 N.E. 2d 416 (1984).

Further explaining, the Appeals Court stated that the severity of the resulting injuries also supported the theory that the crime was committed with specific intent, where the beating of the

victim was so savage that his was rendered unrecognizable, and the resulting disfigurement so substantial that reconstructive surgery was necessary. *Id.* Thus, relying on Massachusetts law, the Appeals Court stated that "specific intent may be inferred from the nature of the injuries as well as evidence that 'the injuries arose from a sustained or atrocious attack'" *Id.*, quoting *Commonwealth v. Sparks*, 42 Mass. App. Ct. 915, 916, 675 N.E.2d 1176 (1997), quoting *Commonwealth v. Cleary*, 41 Mass. App. Ct. 214, 217, 669 N.E.2d 452 (1996).

Looking through to the Appeals Court's reasoning in *Sparks* and *Cleary*, it is clear that this is a matter of Massachusetts law, in which the Appeals Court recognized the mayhem requires proof of specific intent to maim or disfigure another person and that specific intent may inferred from the nature of the injuries, as well as evidence that the injuries arose from a sustained or atrocious attack. *See Commonwealth v. Sparks*, 42 Mass. App. Ct. 915, 916, 675 N.E.2d 1176 (1997), quoting *Commonwealth v. Cleary*, 41 Mass. App. Ct. 214, 217, 669 N.E.2d 452 (1996). In other words, in Massachusetts mayhem is a crime of specific intent requiring proof that defendant intended to maim or disfigure the victim, *see* G.L. c. 265, § 14; however, the case law makes clear that intent may be inferred from the nature of the injury inflicted on the victim. *See Commonwealth v. Sparks*, 42 Mass. App. Ct. 915, 916, 675 N.E.2d 1176 (1997), quoting *Commonwealth v. Cleary*, 41 Mass. App. Ct. 214, 217, 669 N.E.2d 452 (1996).

It is well settled that states have the authority to define the elements that constitute criminal conduct and that a state's definition of the elements constituting an offense is generally "dispositive." *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986). As applied here, Massachusetts has recognized that the intent required for the crime of mayhem may be inferred from the nature of the injury inflicted on the victim. *See Commonwealth v. Sparks*, 42 Mass.

App. Ct. 915, 916, 675 N.E.2d 1176 (1997), quoting *Commonwealth v. Cleary*, 41 Mass. App. Ct. 214, 217, 669 N.E.2d 452 (1996). As a matter of state law, the Appeals Court conclusively determined that the brutal nature of the assault and the severity of the resulting injuries support the theory that the crime was carried out with specific intent. *See* S.R.A., Ex. 5, *Commonwealth v. Anderson*, 58 Mass. App. Ct. at 122-124, 787 N.E. 2d at 1140-1142. This determination cannot be second-guessed on habeas review. *See Pulley v. Harris*, 465 U.S. 37, 41 (1983) (habeas relief cannot be granted on federal constitutional claims that are merely be ancillary to perceived errors in the state-court's application of state law); *Hamm v. Latessa*, 72 F.3d 947, 954 (1st Cir. 1995), *cert. denied*, 519 U.S. 856 (1996) (district court erred in "second-guess[ing]" the state courts on question of what substantive liberty interests were created by state law).

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

/s/Eva M. Badway
Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2824
Dated: September 12, 2005            BBO # 635431