UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
JOHN ANDERSON,                 )
        Petitioner,            )
                               )
v.                             )   Civil Action No. 04-12355- RGS
                               )
DAVID NOLAN,                   )
        Respondent.            )
_____)
```

REPORT AND RECOMMENDATION ON PETITIONER'S
WRIT OF HABEAS CORPUS

May 4, 2007

On November 5, 2004, John Anderson, through counsel, petitioned for a writ of habeas corpus pursuant to 28 U.S.C., § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pursuant to an Order of Reference dated July 26, 2005 (Docket #12), I recommend that the Petition be DENIED.

PRIOR PROCEEDINGS

On September 15, 1997, a Middlesex County grand jury returned seven indictments charging the Petitioner with four counts of assault and battery and one count each of mayhem, assault and battery by means of a dangerous weapon (a shod foot), and assault with intent to commit murder.

Following a jury trial, the Petitioner was convicted of mayhem, assault and battery by means of a dangerous weapon, and two counts of assault and battery. Id. at 36 - 39.  He was acquitted on the charge of assault with intent to murder.  Id. at 35.  The Petitioner was sentenced to state prison for between fifteen years and fifteen years and one day on the mayhem conviction,

and received a concurrent term of nine to ten years for the conviction on the assault and battery with a deadly weapon charge. Trial Transcript Volume IV, at 93-94. The two assault and battery convictions were placed on file with the Petitioner's consent. R.A. at 49; Trial Transcript Volume IV at 94. The Petitioner filed a pro se motion for a new trial on May 10, 2000, which was denied by the trial judge on May 18, 2001. Respondent's Supplemental Answer, 'Ex. 1,' at 13, Docket #128. The Massachusetts Appeals Court vacated the conviction for assault and battery by means of a dangerous weapon sua sponte and ordered that the indictment on that charge be dismissed. Anderson v. Commonwealth, 58 Mass.App.Ct. 117, 128 (2003). The conviction for mayhem was affirmed. Id. The Supreme Judicial Court of Massachusetts denied the Petitioner's application for further appellate review. Commonwealth v. Anderson, 439 Mass. 1108 (2003). The Supreme Court of the United States denied Petitioner's petition for writ of certiorari. Anderson v. Massachusetts, 540 U.S. 1009 (2003).

## FACTUAL BACKGROUND

The following summary of facts is taken from the Appeals Court of Massachusetts' decision in Commonwealth v. Anderson, 58 Mass.App.Ct. 117 (2003).[1]

On August 1, 1997, the Petitioner and his girlfriend, Rita Parks, had been drinking throughout the day at various locations. Near the end of the day, Parks and Anderson entered Captain John's bar in Lowell. Parks sat at the bar next to Glenn Tetrault ("the victim"). The victim made an inappropriate remark to Parks, which she later related to the Petitioner. The Petitioner was angered by the victim's comment and he and Parks followed the victim outside.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), the facts set forth in Commonwealth v. Anderson are presumed to be correct.

The Petitioner punched the victim, who fell to the ground, and then kicked the victim and stomped on his face and head. Jay Carney, a bystander, observed a pool of blood and saw the victim's head "bouncing up and down on the pavement" as the Petitioner continued the attack Id. at 119-120. Carney tried to intervene, but was also attacked by the Petitioner, with Parks now joining in. One of the Petitioner's two assault and battery convictions stemmed from the attack on Carney.

Parks testified at trial that while in the bar, the Petitioner was dancing and appeared sober. Trial Transcript Volume III, at 99. Parks also testified that the Petitioner was not drunk when they followed the victim out of the bar. Id. Evidence was presented at trial that the Petitioner "communicated responsively and intelligently with the police within moments of the beating." Anderson, 58 Mass.App.Ct. at 121. Officer Hawes of the Lowell Police Department testified that while he could detect an odor of alcohol on the Petitioner's breath, the Petitioner did not have trouble understanding what was being said to him and was steady on his feet. Trial Transcript Volume/II at 80; 82; 92-93. Sergeant Murray testified that during processing at the police station approximately five hours later, the Petitioner had no difficulty standing or walking and "absolutely was not slurring his words." Trial Transcript Volume III, at 14-15; 32-33; 37. Sergeant Murray also testified that he could detect a slight odor of alcohol and reported that the Petitioner stated that he "felt fine." Id.

## DISCUSSION

The Petitioner raises three arguments. First, he contends that his right to reasonably effective counsel was denied by his trial counsel's failure to request a jury instruction which would have permitted the jury to consider evidence of the Petitioner's intoxication in deciding

3

whether he possessed the necessary mens rea to maim or disfigure. Petitioner's Memorandum in Supp. of Petition for Writ of Habeas Corpus ("Petitioner's Memo") at 3. He also asserts that his right to reasonably effective assistance of counsel was denied by his counsel's failure to file or to litigate a motion to suppress certain statements he made while in custody. Id. Finally, he argues that the Appeals Court of Massachusetts violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by addressing the intoxication instruction issue in such a manner as to apply a conclusive presumption of specific intent. Id.

DISCUSSION

I.   Standard of Review

28 U.S.C., § 2254(d)(1) provides in relevant part that a petition for habeas corpus on behalf of a person convicted in a State court "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in U.S. Supreme Court cases, or if it decides a case differently than that Court has done on a set of materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002), citing, Williams v. Taylor, 529 U.S. 362, 405-406 (2000). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle but unreasonably applied it to the facts of the particular case. Id.; Williams, 529 U.S. at 407 - 408. An incorrect application of clearly-established federal law is not necessarily an unreasonable one. Id., at 409-410. "[S]ome increment of

incorrectness beyond error is required." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir.2002), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000). That increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court. Id. When a habeas petition "presents a federal claim that was raised before the state court but was left unresolved," this court reviews that claim de novo. Horton v. Allen, 370 F.3d 75, 80 (1st Cir.2004).

II.     Ineffective Assistance of Counsel – Failure to Request Jury Instruction

The Petitioner's first contention is that his Sixth Amendment right to effective assistance of counsel was denied by his trial counsel's failure to request a jury instruction to the effect that with respect to the mayhem charge, jurors were permitted to consider evidence of the Petitioner's intoxication in deciding whether he had the capacity to formulate the required specific intent. Petitioner's Memo, at 3. Trial counsel did not request such an instruction, and the judge did not give one. Anderson, 58 Mass.App.Ct. at 120. The Petitioner was tried under the second theory of mayhem, which requires evidence of a "specific intent to maim or disfigure." Commonwealth v. Martin, 425 Mass. 718, 722 (1997); See also, M.G.L. c. 265, § 14.

The "clearly established Federal law, as determined by the Supreme Court" governing the Petitioner's ineffective assistance claims is Strickland v. Washington, 466 U.S. 668 (1984). Williams v. Taylor, 529 U.S. 362 (2000). When a convicted defendant complains of the ineffectiveness of counsel's assistance, he must show that his or her counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 677-678. There is a strong presumption that trial counsel rendered adequate assistance. Id., at 689-690. An error by counsel – even if professionally unreasonable – does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect upon the judgment. Id., at 691. Because the purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding, deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. Id., at 691-692. The burden is on the Petitioner to demonstrate that counsel's representation fell below an objective standard of reasonableness and "that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." Smullen v. United States, 94 F.3d 20, 23 (1st Cir.1996).

The Appeals Court of Massachusetts addressed the Petitioner's contention regarding this jury instruction at length, including his theory that trial counsel was constitutionally ineffective in failing to request the intoxication instruction. See Anderson, 58 Mass.App.Ct. at 117, 120-125. Upon its review of the record, the Appeals Court expressed doubt as to whether the Petitioner was sufficiently debilitated to warrant such an instruction under state law. Id., at 121. It nonetheless assumed for purposes of its analysis that such an instruction was warranted under state law. Id., at 122. The Appeals Court also assumed that trial counsel had committed error in failing to request the intoxication instruction. Id. It found, however, that even had the Petitioner's trial counsel requested and received such an instruction, there was no cognizable prejudice. Id. at 122-23. In so doing the Appeals Court resolved both the state law jury instruction claim and the federal ineffectiveness claim. Id.

The Petitioner points to no error in the legal standard applied by the Appeals Court (expressing only his disagreement with that court's conclusion). The Appeals Court's conclusion

was not contrary to, or an unreasonable application of, clearly established Federal law.[2]  The jury had before it considerable evidence from which it could reasonably conclude that the Petitioner was in control of his faculties.[3]  Furthermore, the judge instructed the jury twice – both at the

---

[2] The Petitioner contends that de novo review applies. Petitioner's Memo., at 16. He is incorrect. The Appeals Court considered and rejected the ineffectiveness claim. Anderson, 58 Mass. App. Ct. at 117, 120-25. Its decision included a specific discussion of the error and prejudice prongs of the ineffectiveness analysis thus making clear it addressed the federal constitutional ineffectiveness claim on the merits. Id. at 122 & 123-24.

[3] The following facts bore on the intoxication and specific intent issues. Parks testified that she and the Petitioner began drinking sometime after 4:30 p.m. on the day of the assault. Trial Transcript Volume III, at 89. They spent "an hour or two" at a bar on Central Street and during that time they each consumed five or six beers. Id. Parks testified that when they left the bar, the petitioner was not drunk. Id. at 90. Next, the two shared a six pack of beer at the Petitioner's house, which they finished by 8:00 or 8:30 p.m. Id. Parks was feeling "a buzz" at this point. Id. They next visited the Highland Tap, where they had nothing to drink, and then went to Captain John's. Id., at 90-91. They consumed approximately three twelve-ounce mugs of beer between their arrival at Captain John's and its 1:30 a.m. closing. Id., at 92; see also, Anderson, 58 Mass.App.Ct. at 122, n.4. Despite this quantity of alcohol, Parks did not believe that the Petitioner was drunk at the time they left the bar. Trial Transcript Volume III, at 99. She testified that she and the Petitioner had been dancing, and that he had no difficulties in doing so. Id. Testimony from police officers who interacted with the Petitioner (both at the scene and later) corroborated Park's testimony that the Petitioner was not so intoxicated that he was no longer in control of his faculties. For example, at approximately 1:40 a.m., Lowell police officer Kevin Hawes arrived on the scene and observed the fight in progress. Trial Transcript Volume II, at 72-73. Hawes testified that he could detect an odor of alcohol on the Petitioner's breath when speaking with him in close proximity, but that he understood everything that the petitioner said. Id. at 82; 92-93. He also testified that the Petitioner seemed steady on his feet, and had no problems standing. Id., at 80. Sergeant Murray arrived on the scene at approximately 2:00 a.m., and he testified that while still at the scene, the Petitioner was standing erect and had no problems walking, standing or talking. Trial Transcript Volume III., at 10; 30; 34-36. Murray further testified that at 7:30 a.m., during processing at the police station, the Petitioner had "no problems walking," was able to respond to everything Murray said to him and "absolutely was not slurring his words." Id., at 14-15; 37. Sergeant Murray also testified that he could detect a slight odor of alcohol on the Petitioner and that the Petitioner stated that he "felt fine, that he knew where he was, and that he knew what he was doing." Id., at 23; 32.
  Finally, the Appeals Court noted that the "brutal" nature of the beating, the "repeated stomping" on the victim's head and the severity of injuries inflicted permitted the jury, under state law, to infer specific intent. Id. at 123.

beginning of the case and again in his final charge – about the requirement of finding specific intent as an element of proof of the mayhem count. Trial Transcript Volume II, at 20-21; Volume IV, at 74-75. As the Appeals Court noted, the instructions to the jury "reduced any substantial risk of a miscarriage of justice by focusing the jury searchingly on the precise question whether the [petitioner] had the specific intent to maim or disfigure the victim." Anderson, 58 Mass.App.Ct. at 123.

Thus, the Appeals Court concluded that had the intoxication instruction been given "it would [not] have materially influenced the guilty verdict, or been of such effect . . . to render it inferentially plausible that the jury's verdict on the mayhem charge would have been different." Id. at 122. In these circumstances, Petitioner has failed to demonstrate that these conclusions were contrary to, or an unreasonable application of, clearly established Federal law, and the Petitioner is not entitled to habeas relief on this basis.

   III.  Ineffective Assistance of Counsel –  Failure to File or Litigate a Motion to Suppress

The Petitioner next claims that his Sixth Amendment right to effective assistance of counsel was denied by his counsel's failure to file a motion to suppress statements made by him to police.[4] He contends that the record demonstrates that there existed a substantial likelihood that he was too intoxicated and physically injured to make a voluntary, knowing, and intelligent waiver of his Miranda rights or to make voluntary statements to the police. Petitioner's Memo, at 21. He argues that his various counsel's failure to move to suppress those statements was a non-strategic, inadvertent error constituting substandard performance and which was materially prejudicial to the Petitioner. Id.

---

   [4]  Three attorneys represented the Petitioner between his arrest and conviction.

  Anderson made two custodial statements, the first at the scene and the second later at the police station. Anderson, 58 Mass.App.Ct. at 127 n. 10. In both statements, Anderson denied any involvement in the attack on Tetrault. Id. He claimed that Parks' pocketbook was stolen by someone in the bar, that he gave chase and was jumped by the thief and others resulting in a struggle. Id. He first noticed Tetrault when the police pointed him out across the street. Id. He professed a lack of knowledge as to why he was arrested and indicated that the blood on him was his own. Id. Prior to each statement, the defendant was read his Miranda warnings, indicated that he understood his rights and was willing to speak to the officers. Id.

  The Appeals Court "decline[d] to reach this claim" of ineffectiveness of counsel. Id. at 128. It determined that the record was inadequately developed to permit review of the claim on direct appeal in the absence of a motion for new trial raising the claim. Anderson, 58 Mass.App.Ct. at 128. The Petitioner urges this Court both to conduct a de novo review of this ineffective assistance claim, and also to find that the Appeals Court's failure to address the claim was contrary to, or an unreasonable application of, clearly-established Federal law. Petitioner's Memo, at 22. The latter inquiry is unwarranted because wherever a claim has not been adjudicated on the merits in a state court proceeding, that issue receives de novo habeas review. Horton v. Allen, 370 F.3d at 83, citing, Norton v. Spencer, 351 F.3d 1, 5 (1st Cir.2003); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir.2001), cert. denied, 535 U.S. 1018 (2002).

  The Respondent contends that this issue does not implicate habeas relief at all because the issue was decided by the state court on independent and adequate state grounds. Respondent's Memo, at 12-13. The independent and adequate state ground doctrine bars federal habeas relief when a state court declined to address a prisoner's federal claims because the prisoner had failed

9

to meet a state procedural requirement. See Coleman v. Thompson, 501 U.S. 722, 729 - 730 (1991) and cases cited therein. When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, there is an additional concern that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. Id., at 731.

The Appeals Court of Massachusetts' decision to decline to review the Petitioner's claim of ineffective assistance for failure to litigate a motion to suppress has the hallmarks of such a state procedural default. Massachusetts law clearly provides that ineffective assistance claims should be raised in a motion for a new trial and are not reviewed for the first time on direct appeal, absent extraordinary circumstances. See Commonwealth v. Zinser, 446 Mass. 807, 810 (2006) and cases cited therein. A narrow exception to that rule exists in special cases where the factual basis of the claim appears indisputably on the trial record. Id., at 811. This, however, is not such a case, since the Appeals Court of Massachusetts declined to reach the claim precisely because the Petitioner's "failure to file a motion for a new trial on the ineffective assistance claim . . . pretermitted the development of a complete record which would allow for fully informed appellate review and decision." Anderson, 58 Mass.App.Ct. at 128 (internal citation omitted).[5] After the conclusion of his direct appeal, Petitioner did not file a motion for new trial raising the ineffectiveness claim. Accordingly, the Petitioner's claim of ineffective assistance consisting of a failure to litigate a motion to suppress was decided by the state court on an independent and

---

[5] I note that Petitioner makes no argument that the record was in fact fully developed.

adequate state ground, and is not subject to habeas review.[6]

    IV.  <u>Due Process Violation - Conclusive Presumption of Specific Intent</u>

Finally, the Petitioner argues that in the course of affirming the mayhem conviction, the Appeals Court addressed the Petitioner's intoxication jury instruction claim in such a manner as to effectively apply a conclusive presumption of specific intent, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. <u>Petitioner's Memo</u>, at 23.

In Massachusetts, mayhem is a crime of specific intent requiring proof that the defendant intended to maim or disfigure the victim, <u>see</u> M.G.L. c. 265, § 14. The relevant portion of the Appeals Court's ruling is as follows:

  In addition to proof concerning the [Petitioner's] mental functioning, the brutal

---

[6]   Although the Court need not go further, I note, for the sake of completeness in this Report and Recommendation that the claim is without merit even when considered on a de novo standard of review. First, the record indicates that counsel considered and rejected filing a motion to suppress. The hearing on such a motion was scheduled three times, ultimately counsel filed 13 motions, but no motion to suppress. <u>Respondent's Supplemental Answer</u>, 'Exhibit 1,' at 6-7. The record suggests a self-defense argument was possible (<u>see</u>, <u>Id.</u>, at 9, Docket # 78), and the record contains other incriminating statements made by Petitioner not subject to suppression in the form of letters to and conversations with Parks. Trial Transcript Volume III, at 110-112; 119-127. In light of all of these circumstances, a motion to suppress might have been ill-advised as it would have exposed Petitioner to pretrial testimony that would have been available for use as impeachment evidence at trial and, in any event, does not fall below an objective standard of reasonableness.

    Moreover, Petitioner has established neither that the motion was meritorious nor a reasonable probability of a different verdict in the absence of the custodial statements to the police. The evidence summarized in footnote 3 indicates that Petitioner was in sufficient control of his faculties to knowingly and voluntarily waive his rights. The other evidence against him was strong. Parks conveyed numerous incriminating statements made by Petitioner. Parks and Carney each testified to witnessing Petitioner's assaults on the victims. Physical evidence also incriminated Petitioner – there was a large amount of blood on Anderson's shoes and pants, and his shoe print was consistent with a footprint in the blood surrounding Tetrault.

nature of the assault bespeaks of the defendant's ability to formulate specific intent. The [Petitioner's] repeated stomping on Tetrault's head was so forceful that the victim's head bounced up and down on the sidewalk. [citation omitted] Moreover, the severity of the resulting injuries also supports the theory that the crime was perpetrated with specific intent. The beating of Tetrault was so savage that his face was rendered unrecognizable, and the resulting disfigurement so substantial that reconstructive surgery was required. "Specific intent may be inferred from the nature of the injuries as well as evidence that 'the injuries arose from a sustained or atrocious attack.'" [citation omitted].

Anderson, 58 Mass.App.Ct., at 123.

From this ruling, the Petitioner argues that the Appeals Court found that the requested jury instruction was not required in this case "because the nature and cause of the injuries sustained by the victim constituted evidence sufficient for a finding that the petitioner formed the specific intent to main or disfigure." Petitioner's Memo, at 23. He next argues that this constitutes a conclusive presumption, barred by Due Process considerations, citing Sandstrom v. Montana, 342 U.S. 246, 274-275 (1952).[7]

The Petitioner mischaracterizes the Appeals Court's decision; it applied no such conclusive presumption. The Appeals Court assumed for purposes of its analysis that the failure to deliver the intoxication instruction was error. Anderson, 58 Mass.App.Ct., at 122. It was not, however, persuaded that such error materially influenced the verdict. Id., at 122. It next included among the several rationales offered for that conclusion the fact that "[s]pecific intent may be inferred from the nature of the injuries as well as evidence that 'the injuries arose from a sustained or atrocious attack.' " Id. at 122-24(quoting Commonwealth v. Sparks, 42

---

[7] The Respondent argues that the question is not appropriate for habeas review because it concerns a state court's application of state law. Respondent's Memo, at 13. The question need not be decided because the threshold assertion of the Petitioner (i.e., that the Appeals Court applied such a presumption) does not withstand scrutiny.

Mass.App.Ct. 915 (1997), quoting, Commonwealth v. Cleary, 41 Mass.App.Ct. 214, 217 (1996)). It also considered – and in fact gave primary importance to – "the strength of the Commonwealth's evidence . . .that, notwithstanding his alcohol consumption, the defendant remained in control of his faculties – a cognitive affect from which the jury could further conclude that the defendant was capable of forming the requisite specific intent." Id., at 123. It also considered the fact that the judge twice instructed the jury on the requirement of finding specific intent, both at the beginning of the case, and in the final charge. Id.  Thus, the Appeals Court did not deem the intoxication instruction to be "not required . . . because" of the nature of the attack and injuries, nor did it otherwise apply any conclusive presumption. Petitioner's Due Process argument is therefore moot.

### CONCLUSION

For the foregoing reasons it is recommended that Petitioner's Petition be DENIED.[8]

                                              /s/ Leo. T. Sorokin
                                              LEO. T. SOROKIN
                                              UNITED STATES MAGISTRATE JUDGE

---

[8] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emirian Valencia-Compete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schneider, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. An, 474 U.S. 140, 106 S.C. 466 (1985).